UNITED STATES
BANKRUPTCY COURT
FILED MAIL

DEC 28 2004

AUSTIN CLERK
...UKEE, WISCONSIN

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re the petition of:

STEVEN J. QUERIO
a/k/a Steve Querio,
        Debtor.

REAFFIRMATION
AGREEMENT

Case No. 04-33143-svk

WHEREAS, Steven J. Querio, hereafter referred to as "Debtor," has executed a Guaranty on September 14, 2004, a copy of which is attached hereto as Exhibit "A," by which said Debtor assumed responsibility for the obligation of Shawano Avenue Healthcare Ventures, LLC, dated September 10, 2004 in the amount of Six Hundred Fifty Thousand and no/100 ($650,000.00), and

WHEREAS, Debtor has filed a petition in the United States Bankruptcy Court for the Eastern District of Wisconsin for relief under Chapter 7 of the Bankruptcy Code and has included the aforesaid debt due to Bank in his schedules,

NOW, THEREFORE, Debtor and Bank hereby agree as follows:

1. Debtor guaranties to Bank the payment and performance of the obligation of Shawano Avenue Healthcare Ventures, LLC, dated September 10, 2004 in the amount of Six Hundred Fifty Thousand and no/100 ($650,000.00) Dollars, a copy of which is attached hereto as Exhibit "B."

2. It is understood that this Reaffirmation Agreement shall be enforceable against Debtor at the time of discharge, if Debtor is granted a discharge.

3. It is understood that this Reaffirmation Agreement is enforceable against the Debtor after discharge. The Debtor understands that this Agreement is not required under bankruptcy law. The Debtor understands that he is entering into this Agreement freely, voluntarily and fully informed of his rights. The Debtor acknowledges that this Agreement does not pose an undue hardship on him.

4. Both parties acknowledge that Debtor has a right to rescind this Agreement at any time prior to discharge or within 60 days after this Agreement is filed with the court, whichever occurs later. Any rescission of this Agreement shall be made in writing and notice shall be given to Stephen A. Kase, c/o Baylake Bank at P.O. Box 9, Sturgeon Bay, WI 54235-0009, by first class mail.

**DEBTOR:**

Dated: 12/22/04 _____     _____
                                    Steven J. Querio

**BAYLAKE BANK**

Dated: 12-23-04 _____     By: _____
                                    Stephen A. Kase, General Counsel

<u>Attorney's Declaration:</u>  This agreement represents a fully informed and voluntary agreement that does not impose an undue hardship on the Debtor or any dependent of the Debtor.

Dated: 12/22/04 _____     By: _____
                                    Tricia A. Nell
                                    Attorney for Debtor

Drafted by:
Stephen A. Kase
P.O. Box 9, Sturgeon Bay  WI 54235
Phone No.:  (920) 743-5551
State Bar No.:  01015332

2

# GUARANTY

STURGEON BAY
(City)

WISCONSIN
(State)

SEPTEMBER 10, 2004

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce BAYLAKE BANK, 217 N FOURTH AVE P.O. BOX 9 STURGEON BAY, WI 54235-0009
herein, with its participants, successors and assigns, called "Lender", at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of  SHAWANO AVENUE HEALTHCARE VENTURES, LLC

herein called "Borrower") or to engage in any other transactions with Borrower, the Undersigned hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

A. If this ☒ is checked, the Undersigned guarantees to Lender the payment and performance of the debt, liability or obligation of Borrower to Lender evidenced by or arising out of the following:  NOTE DATED 9/10/04 IN THE AMOUNT OF $650,000.00                                                          and any extensions,
renewals or replacements thereof (hereinafter referred to as the "Indebtedness").

B. If this ☐ is checked, the Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafter collectively referred to as the "Indebtedness"). Without limitation, this guaranty includes the following described debt(s):

The term "Indebtedness" as used in this guaranty shall not include any obligations entered into between Borrower and Lender after the date hereof (including any extensions, renewals or replacements of such obligations) for which Borrower meets the Lender's standard of creditworthiness based on Borrower's own assets and income without the addition of a guaranty, or for which a guaranty is required but Borrower chooses someone other than the joint Undersigned to guaranty the obligation.

The term "Undersigned" shall refer to all persons who sign this guaranty, severally and jointly.

The Undersigned further acknowledges and agrees with Lender that:

1. No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing, except full payment and discharge of all indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit or release the liability of the Undersigned hereunder. However, in an open-end transaction, in which more than one person may be liable on this Guaranty, any of the Undersigned may limit his or her liability for future extensions of credit by giving written notice of the intent to do so to the Lender. Liability for future extensions of credit will cease 15 days after such notice is received by the Lender.

2. This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked by written notice actually received by the Lender, and such revocation shall not be effective as to Indebtedness existing or committed for at the time of actual receipt of such notice by the Lender, or as to any renewals, extensions and refinancings thereof. If there be more than one Undersigned, such revocation shall be effective only as to the one so revoking. The death or incompetence of the Undersigned shall not revoke this guaranty, except upon actual receipt of written notice thereof by Lender and then only as to the decedent or the incompetent and only prospectively, as to future transactions, as herein set forth.

3. This agreement will be in default if: (i) the borrower is in default (as defined in Wisc. Stat. § 425.103, if applicable to the underlying transaction) on the promissory note(s) or any security agreement securing the note(s); or (ii) the Undersigned fails to comply with any term of this agreement, and this failure materially impairs the condition, value or protection of Lenders right to the collateral or materially impairs the Undersigned's ability to pay the obligations due under this agreement.

If an act constituting a default occurs, and the right to cure attaches, the Lender will provide a written notice of the default to each person obligated on the Indebtedness, including the Undersigned. Such notice will be provided at least 15 days prior to any action by the Lender to accelerate the maturity date or commence any action.

4. The liability of the Undersigned hereunder shall be limited to a principal amount of $  650,000.00
(if unlimited or if no amount is stated, the Undersigned shall be liable for all Indebtedness, without any limitation as to amount), plus accrued interest thereon and all statutory costs and statutory attorneys' fees referable thereto. Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount, without affecting or impairing the liability of the Undersigned hereunder. The Lender may apply any sums received by or available to Lender on account of the Indebtedness from Borrower or any other person (except the Undersigned), from their properties, out of any collateral security or from any other source to payment of the excess. Such application of receipts shall not reduce, affect or impair the liability of the Undersigned hereunder. If the liability of the Undersigned is limited to a stated amount pursuant to this paragraph 4, any payment made by the Undersigned under this guaranty shall be effective to reduce or discharge such liability only if accompanied by a written transmittal document, received by the Lender, advising the Lender that such payment is made under this guaranty for such purpose.

If the Indebtedness is in Default as defined in paragraph 3, then Lender may set off any amount due and payable under this guaranty against any right the Undersigned may have to receive money from Lender, after sending written notice of the Undersigned's default and right to cure and waiting 15 days, if applicable.

This guaranty is ☒ unsecured; ☐ secured by a mortgage or security agreement dated _____ ;
☐ secured by _____
This guaranty includes the additional provisions on page 2, all of which are made a part hereof.
The Undersigned hereby acknowledges receipt of a copy of this Guaranty on today's date.

_____          9-14-04
Undersigned                                 Date
STEVEN J. QUERIO

_____          _____
Undersigned                                 Date

(page 1 of 2)

EXHIBIT A

## ADDITIONAL PROVISIONS

5. The Undersigned will pay or reimburse Lender for all statutory costs and statutory attorneys' fees incurred by Lender in connection with the protection, defense or enforcement of this guaranty in any litigation, bankruptcy or insolvency proceedings.

6. Whether or not any existing relationship between the Undersigned and Borrower has changed or ended and whether or not this guaranty has been revoked, Lender may, but shall not be obligated to, enter into transactions resulting in the creation or continuance of Indebtedness, without any consent or approval by the Undersigned, unless otherwise provided by the Wisconsin Consumer Act. The liability of the Undersigned shall not be affected or impaired by any of the following acts or things (which Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty, without approval by the Undersigned): (i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all Indebtedness; (ii) any one or more extensions or renewals of Indebtedness (whether or not for longer than the original period) or any modification of the interest rates, maturities or other contractual terms applicable to any Indebtedness; (iii) any waiver, adjustment, forbearance, compromise or indulgence granted to Borrower, any delay or lack of diligence in the enforcement of Indebtedness, or any failure to institute proceedings, file a claim, give any required notices or otherwise protect any Indebtedness; (iv) any full or partial release of, settlement with, or agreement not to sue Borrower or any other guarantor or other person liable for the Indebtedness; (v) any discharge of any evidence of Indebtedness or the acceptance of any instrument in renewal thereof or substitution therefor; (vi) any failure to obtain collateral security (including rights of setoff) for Indebtedness, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to protect, insure, or enforce any collateral security; or any release, modification, substitution, discharge, impairment, deterioration, waste, or loss of any collateral security; (vii) the foreclosure or enforcement of any collateral security; (viii) the transfer of any Indebtedness or any evidence thereof; (ix) any order of application of any payments or credits upon Indebtedness as permitted by Wisc. Stat. §§ 422.413 and 422.418; (x) any election by the Lender related to the Borrowers bankruptcy under § 1111(b)(2) of the United States Bankruptcy Code.

7. The Undersigned shall be and will remain liable for any deficiency, if allowed by Wisc. Stat. § 425.209, remaining after foreclosure of any mortgage or security interest securing Indebtedness. The Undersigned shall be and will remain obligated to pay Indebtedness even though any other person obligated to pay the Indebtedness, including Borrower, has such obligation discharged in bankruptcy. "Indebtedness" shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which Borrower is discharged from paying or which do not otherwise accrue to Indebtedness due to Borrower's discharge, and the Undersigned shall remain obligated to pay such amounts as though Borrower's obligations had not been discharged.

8. The Undersigned waives presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing Indebtedness, unless otherwise provided by the Wisconsin Consumer Act. Lender shall not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this guaranty.

9. This guaranty shall be enforceable against each person signing this guaranty. If there is more than one signer, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each of every particular and shall be fully binding upon and enforceable against either, any or all the Undersigned. This guaranty shall be effective upon delivery to Lender, without further act, condition or acceptance by Lender, and shall be binding upon the Undersigned and the heirs, representatives, successors and assigns of the Undersigned and shall inure to the benefit of Lender and its participants, successors and assigns. Any invalidity or unenforceability of any provision or application of this guaranty shall not affect other lawful provisions and application hereof, and to this end the provisions of this guaranty are declared to be severable, unless otherwise provided by the Wisconsin Consumer Act. Except as authorized by the terms herein, this guaranty may not be waived, modified, amended, terminated, released or otherwise changed except by a writing signed by the Undersigned and Lender. The validity, construction, and enforcement of this guaranty shall be governed by the laws of the State of Wisconsin. The Undersigned waives notice of Lender's acceptance hereof.

*(page 2 of 2)*

Bankers Systems, Inc., St. Cloud, MN Form M-240-WI 10/1/2003 (For Corporate Guarantor use M-250)

SEP-18-2004(TUE) 14:56   Fox River Healthcare

| | | |
|---|---|---|
| SHAWANO AVENUE HEALTHCARE VENTURES, LLC<br>1740 SHAWANO AVENUE, SUITE 200, PO BOX 12358<br>GREEN BAY, WI 54307 | BAYLAKE BANK<br>217 N FIRST STREET<br>P.O. BOX 9<br>STURGEON BAY, WI 54235-0009 | TIN  39-1594226<br>Loan Number 574076<br>Date  09/13/2004<br>Maturity Date 10-13-2012<br>Loan Amount $ 650,000.00<br>Renewal Of<br>LENDER/FORT LENDER |

**BORROWER'S NAME AND ADDRESS**
"I" includes each borrower above, jointly and severally.

**LENDER'S NAME AND ADDRESS**
"You" means the lender, its successors and assigns.

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of SIX HUNDRED FIFTY THOUSAND AND NO/100
Dollars $ 650,000.00

☒ Single Advance: I will receive all of this principal sum on _____. No additional advances are contemplated under this note.
☐ Multiple Advance: The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____ I will receive the amount of $ _____ and future principal advances are contemplated.
Conditions: The conditions for future advances are _____

☐ Open End Credit: You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____.
☐ Closed End Credit: You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

INTEREST: I agree to pay interest on the outstanding principal balance from 09/13/2004 at the rate of _____%
per year until 10-13-2004.
☒ Variable Rate: This rate may then change as stated below.
    ☒ Index Rate: The future rate will be 1.000 PERCENT ABOVE the following index rate: HIGHEST US PRIME RATE PUBLISHED IN WALL STREET JOURNAL MONEY RATES.
    ☐ No Index: The future rate will not be subject to any internal or external index. It will be entirely in your control.
    ☒ Frequency and Timing: The rate on this note may change as often as EVERY MONTH BEGINNING 11-13-2004. On EVERY FIRST DAY OF THE FOLLOWING MONTH.
        A change in the interest rate will take effect ON THE NEXT DAY OF THE SAME BASIS AS THE INTEREST RATE BEFORE MATURITY.
    ☐ Limitations: During the term of this loan, the applicable annual interest rate will not be more than _____% or less than _____%. The rate may not change more than _____%.
    Effect of Variable Rate: A change in the interest rate will have the following effect on the payments: ☒ The amount of the final payment will change.
    ☐ The amount of each scheduled payment will change.
    ☐ _____

ACCRUAL METHOD: Interest will be calculated on a ACTUAL/360 basis.
POST MATURITY RATE: I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
    ☐ on the same fixed or variable rate basis in effect before maturity (as indicated above).
    ☒ at a rate equal to 2.00% HIGHER THAN THE INTEREST RATE COMPUTED ON THE SAME BASIS AS THE INTEREST RATE BEFORE MATURITY.
☒ LATE CHARGE: If a payment is made more than 15 days after it is due, I agree to pay a late charge of 5.000% OF THE LATE AMOUNT.

☒ RETURNED CHECK CHARGE: I agree to pay a charge of $15.00 for each check returned unsatisfied because of insufficient funds.
☐ ADDITIONAL CHARGES: In addition to interest, I agree to pay the following charges which ☐ are ☒ are not included in the principal amount above: _____

PAYMENTS: I agree to pay this note as follows:
95 MONTHLY PAYMENTS OF $8,502.22 BEGINNING 10-13-2004 AND 1 PAYMENT OF $8,502.44 ON 10-13-2012. THIS IS A VARIABLE RATE LOAN AND THE FINAL PAYMENT AMOUNT MAY CHANGE.

PURPOSE: The purpose of this loan is COMMERCIAL
ADDITIONAL TERMS: *THE ACTUAL AMOUNT OF THE FINAL PAYMENT MAY CHANGE*

**SPECIAL NOTICES - WISCONSIN RESIDENTS ONLY**

☐ Married Borrower: If checked, the obligation evidenced by this note and any agreement securing this note is incurred in the interest of my marriage or family.

Non-Signing Spouse: The undersigned is the spouse of the borrower signing this note, notably (states of the credit extended under this note, and without any notice of the extension of credit).

X _____ (Seal)    X _____ (Seal)

☐ SECURITY: This note is separately secured by (describe separate document by type and date): _____

_____
(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

**SIGNATURES: BY SIGNING UNDER SEAL, I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2). I have received a copy on today's date. SHAWANO AVENUE HEALTHCARE VENTURES, LLC**

X _____ (Seal)
STEVEN L. ANDREWS, MEMBER

_____ (Seal)
DAVID T. CLARKE, MEMBER

Signature for Lender

_____ (Seal)
LES BRINS, VP - COMMERCIAL LOANS

_____ (Seal)

UNIVERSAL NOTE
EXPERTI © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN-WI 3/30/2002          (page 1 of 2)

EXHIBIT "B"

**DEFINITIONS:** As used on page 1, "DX " means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state of Wisconsin will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:

(1) any deposit account balance I have with you;

(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and

(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree

to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:

(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).

(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.

(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.

(4) You may refuse to make advances to me or allow purchases on credit by me.

(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:

(1) demand payment of amounts due (presentment);

(2) obtain official certification of nonpayment (protest); or

(3) give notice that amounts due have not been paid (notice of dishonor).

I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may or your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |

Experť © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form PN-MI 3/8/2002